**Lourdes C. VANASCO, Plaintiff–Appellant,**

v.

**NATIONAL-LOUIS UNIVERSITY, Defendant–Appellee.**

No. 97–1717.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 8, 1998.

Decided Feb. 27, 1998.

Timothy M. McLean (argued), Heroux, Clingen, Callow, Wolfe & McLean, Wheaton, IL, for Plaintiff–Appellant.

Robert E. Arroyo (argued), Jackson, Lewis, Schnitzler & Krupman, Chicago, IL, for Defendant–Appellee.

Before CUMMINGS, COFFEY and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Lourdes Vanasco was an instructor of English as a second language at National–Louis University ("the University"), a private institution of higher learning in Evanston, Illinois. In September 1992, Mrs. Vanasco's second application for tenure was denied by the University. At that time, Mrs. Vanasco was fiftyeight years old. After receiving a right to sue letter from the Equal Employment Opportunity Commission ("EEOC"), Mrs. Vanasco brought this action under the Age Discrimination in Employment Act ("ADEA") alleging that the University denied her application for tenure because of her age. In addition, Mrs. Vanasco alleged that the University denied her application for tenure in retaliation for her filing an age discrimination complaint with the EEOC after her first application for tenure was denied in 1990. The district court granted the University summary judgment on both claims. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

I

BACKGROUND

National-Louis University is a private institution of higher learning with its main campus in Evanston, Illinois. There are three colleges within the University: the College of Education, the College of Arts and Sciences and the College of Management and Business. There are four levels of faculty at the University ranging from instructor (the lowest position) to professor (the highest position). From 1983 to 1993, Mrs. Vanasco was employed as a full-time instructor of English as a second language in the University's Language Institute, a department within the College of Arts and Sciences.

Tenure decisions at the University are made by two separate faculty committees. Within each college, on an annual basis, faculty members elect colleagues to the College's promotion and tenure committee ("CPTC"). In addition, faculty members of each college also elect colleagues to serve on the institutional promotion and tenure committee ("IPTC") which considers all applications for promotion or tenure from faculty at the University. The CPTC and the IPTC review the dossiers submitted by applicants

and letters of recommendation. As a matter of policy, the University grants tenure selectively. Indeed, an award of tenure indicates "recognition by the trustees, the administration and faculty colleagues of a high level of academic achievement and quality of service" to the University. R.9, Kapela Aff., Ex. C.

Mrs. Vanasco first applied for tenure during the 1989–90 academic year. Only one of the eight other full-time faculty in the Language Institute wrote a letter in support of her tenure application;[1] moreover, several other faculty members wrote letters recommending that her application be denied.[2] Both the CPTC and the IPTC recommended against granting tenure to Mrs. Vanasco. Accordingly, the University decided to deny Mrs. Vanasco's tenure application.

Mrs. Vanasco then filed charges of age discrimination with the EEOC. She also filed an internal grievance with a faculty appeals committee ("FAC"). Under the University's system, the FAC's review of tenure decisions is limited to procedural problems. The 1990–91 FAC recommended that Mrs. Vanasco's grievance be sustained because it believed that the composition of the tenure committees was improper, the criteria for tenure were unclear and there were no guidelines for the submission of tenure dossiers. Based on these findings, the appeals committee recommended that the University give Mrs. Vanasco another year to apply for tenure. Both the IPTC and CPTC disagreed with the appeals committee's findings, but the University ultimately decided to offer Mrs. Vanasco a full-time teaching contract for the 1991–92 and 1992–93 academic years so that she could be reconsidered for tenure.

Mrs. Vanasco reapplied for tenure during the 1991–92 academic year. At that time, none of the other faculty members at the Language Institute wrote a letter in support of Mrs. Vanasco's tenure application.[3] Once again, Mrs. Vanasco's colleagues voiced concern about her qualifications. Both the CPTC and the IPTC voted unanimously to reject Mrs. Vanasco's application. Mrs. Vanasco again filed an internal grievance and the 1992–93 FAC again found procedural errors in the handling of Mrs. Vanasco's tenure application. However, on this occasion, the University decided to uphold the decisions of the tenure committees and denied Mrs. Vanasco's application for tenure. Accordingly, the University notified Mrs. Vanasco that her employment contract for the 1992–93 academic year was a terminal contract. At the time of this decision, Mrs. Vanasco was 58 years old.

After the University rejected her appeal, Mrs. Vanasco again filed charges with the EEOC alleging that the University discriminated against her because of her age with respect to its denial of her second tenure application and that it retaliated against her for filing her 1990 EEOC charge. Mrs. Vanasco received a right to sue letter from the EEOC and brought this suit pursuant to that letter. On February 5, 1997, the district court granted the University's motion for summary judgment on Mrs. Vanasco's age discrimination claim on the ground that she was unable to present evidence sufficient to create a genuine issue of material fact on the issue of pretext. The district court also granted the University's motion for summary judgment on Mrs. Vanasco's retaliation claim on the ground that she was unable to present evidence sufficient to establish a prima facie case of retaliatory discharge.

## II

## DISCUSSION

### A.

■ We conduct plenary review of a district court's entry of summary judgment.

---

**1.** In that letter, the faculty member described Mrs. Vanasco as "a devoted teacher" and "active participant at Department meetings." R.10, at ¶ 10.

**2.** These faculty members were the Assistant Dean, division of Language and Academic Development, the Dean of the College of Arts and Sciences and the Department Chair for the Language Institute. See R.10, at ¶¶ 7–9.

**3.** Mrs. Vanasco asked the faculty member who previously had written on her behalf to write a letter of recommendation in support of her second application for tenure, but that member declined because she believed that Mrs. Vanasco's service within the department had diminished in the period after her first tenure application. In the view of this faculty member, Mrs. Vanasco's minimal involvement in department affairs left a burden for the rest of the full-time faculty.

*See Bahl v. Royal Indem. Co.*, 115 F.3d 1283, 1289 (7th Cir.1997). However, we are obliged to review the record in the light most favorable to the nonmoving party and to draw all reasonable inferences in that party's favor. *See id.* We shall uphold a grant of summary judgment only when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "'This standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues.'" *Sample v. Aldi Inc.*, 61 F.3d 544, 547 (7th Cir.1995) (quoting *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir.1993)). Nonetheless, "[i]f the non-moving party bears the burden of proof on an issue, ... that party may not rest on the pleadings and must instead show that there is a genuine issue of material fact." *Id.* Moreover, "the mere existence of *some* alleged dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Indeed, to avoid summary judgment, the nonmovant bears the burden of setting forth "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "A dispute about a material fact is 'genuine' only if a reasonable jury could render a verdict for the non-moving party 'if the record at trial were identical to the record compiled in the summary judgment proceeding.'" *Griffin v. City of Milwaukee*, 74 F.3d 824, 827 (7th Cir.1996) (quoting *CSX Transp., Inc. v. Chicago & North Western Transp. Co.*, 62 F.3d 185, 188 (7th Cir.1995)). In this case, Mrs. Vanasco submits that there are genuine issues of material fact concerning both her age discrimination claim and her retaliatory discharge claim.

### B.

■ Under the ADEA, employers are prohibited from discriminating on the basis of age against employees who are at least forty years old. *See* 29 U.S.C. §§ 623(a), 631(a). "To succeed on a discrimination claim under the ADEA, a plaintiff must show that her termination or other adverse employment action would not have occurred 'but for' her employer's motive to discriminate on the basis of her age." *Fuka v. Thomson Consumer Elecs.*, 82 F.3d 1397, 1402 (7th Cir.1996). The plaintiff may prove her case in one of two ways—through direct evidence or via the indirect burden-shifting method of *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Fuka*, 82 F.3d at 1402. "Under either method, summary judgment is improper if the plaintiff offers evidence from which an inference of age discrimination may be drawn." *Id.* at 1402–03.

■ In this case, Mrs. Vanasco has not come forward with direct evidence of age discrimination, but instead has presented her case using the burdenshifting method. In order to establish an ADEA prima facie case, Mrs. Vanasco must show that she is within the protected age group, that she was qualified for tenure, that she was denied tenure and that a substantially younger employee was granted tenure. *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311–13, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996); *see also Namenwirth v. Board of Regents of the Univ. of Wis. Sys.*, 769 F.2d 1235, 1240 (7th Cir.1985) (discussing requirements of prima facie case in discrimination case involving denial of tenure), *cert. denied*, 474 U.S. 1061, 106 S.Ct. 807, 88 L.Ed.2d 782 (1986). If Mrs. Vanasco is able to establish a prima facie case, the burden of production shifts to the University to articulate a nondiscriminatory reason for denying Mrs. Vanasco tenure. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. Once the University comes forward with a nondiscriminatory reason for its decision, Mrs. Vanasco must then prove that the University's stated reason is merely a pretext for age discrimination. *See Fuka*, 82 F.3d at 1404. Mrs. Vanasco may satisfy this burden "by producing evidence that the proffered reason is false, either because it has no basis in fact or because it did not actually motivate her discharge." *Id.* If Mrs. Vanasco meets that

burden, "she need not also come forward with further evidence of intentional discrimination to survive summary judgment. Her proof would at that point be sufficient to support an inference that the company's real reason was discriminatory." *Id.*

In the district court proceedings, the University conceded that Mrs. Vanasco met the first, third and fourth elements of her prima facie case, but contended that she was not qualified for tenure. The court, however, declined to address the issue of whether Mrs. Vanasco had established a prima facie case of age discrimination and proceeded directly to the question of whether Mrs. Vanasco had presented sufficient evidence to create a genuine issue of material fact on the issue of pretext. Like the district court, we too shall proceed directly to the issue of pretext. Indeed, we have previously noted that "in many employment discrimination cases, the second element of the prima facie case, satisfactory job performance, and the issue of pretext focus on the same circumstances because the employer maintains that the discharge was based on its reasonable belief that the employer was not performing in an acceptable manner." *Denisi v. Dominick's Finer Foods, Inc.*, 99 F.3d 860, 864 (7th Cir.1996). Thus, although we recognize that the prima facie case is technically the first step in the burdenshifting method, "we shall eschew a mechanistic application of *McDonnell Douglas* in this circumstance," *Fuka*, 82 F.3d at 1404, and proceed to consider whether Mrs. Vanasco met her burden of showing pretext.

We first note that the University has met its burden of articulating legitimate nondiscriminatory reasons for its decision to deny Mrs. Vanasco's second application for tenure. The University submits that its decision was based on the unanimous view of the two 1991–92 tenure committees that Mrs. Vanasco failed to demonstrate the "high level of performance expected of a tenure applicant." R.9, Howard Aff., Ex. A. Specifically, the 1991–92 CPTC concluded that Mrs. Vanasco: (1) had not demonstrated a significant level of involvement in curriculum innovation, in-

structional research and programmatic design that would be expected of a tenure candidate; (2) had not demonstrated significant service to the institution; and (3) had not "exhibited a commitment to NLU as would be suggested by significant leadership or contribution in areas of institutional importance." *Id.* The 1991–92 IPTC concurred with the findings of the CPTC and concluded that "Mrs. Vanasco has not demonstrated a high level of performance nor a strong level of commitment to National–Louis University." R.9, Ellor Dep., Ex. A. In addition, the IPTC noted that there was "a remarkable lack of letters of reference from [Mrs. Vanasco's] colleagues in the Language Institute" and that Mrs. Vanasco presented little evidence of "significant scholarly presentations." *Id.*

If she is to survive the University's motion for summary judgment, Mrs. Vanasco must now come forward with sufficient evidence to allow a reasonable factfinder to find that the University's proffered reasons for its decision are pretextual. In order to meet this burden, Mrs. Vanasco must present evidence to suggest not that the University was mistaken in denying her tenure but that it was lying in order to cover up the true reason, her age. *See Kuhn v. Ball State Univ.*, 78 F.3d 330, 333 (7th Cir.1996). Mrs. Vanasco is unable to meet this burden. In fact, Mrs. Vanasco's own deposition testimony weighs heavily against her. When questioned regarding her colleagues' evaluations of her performance in their letters recommending against her second application for tenure, she expressed her disagreement with their opinions but admitted that she had no reason to doubt that they were stating their honest opinions. *See* R.22, Vanasco Dep., at 95–97, 101–03.[4] This admission is fatal to Mrs. Vanasco's contention that the University's proffered reasons for its decision were pretextual.

Moreover, Mrs. Vanasco's attempts to cast doubt on the University's explanation of its tenure decision are unconvincing. First, Mrs. Vanasco endeavors to impeach the University's motives by presenting evidence of

---

4. Mrs. Vanasco also testified at her deposition that she had no reason to doubt the honesty of the negative recommendation offered by one of her colleagues during the University's denial of her first tenure application. *See* R.22, Vanasco Dep., at 79.

what she asserts to be a pattern of systematic age discrimination. In support of this claim, Mrs. Vanasco points to a chart (submitted by the University in support of its summary judgment motion) which lists the names and ages of the individuals considered for tenure from 1980 to 1990 and the action taken. *See* R.22, Vanasco Dep., Ex. 29. That chart shows that, in those years, the University denied tenure to six out of nine applicants over fifty and to only four out of forty-four applicants under fifty. However, this chart does not set forth the relative qualifications of those listed. Without such information, one cannot compare the qualifications of those individuals granted tenure with those individuals who were not. Consequently, it is simply impossible to infer, solely on the basis of this chart, that age bias improperly influenced those decisions. Indeed, evidence of scattered decisions either favoring or disfavoring older employees reveals little about the University's processes and is certainly insufficient, without more, to prove a pattern of age discrimination. *See Kuhn*, 78 F.3d at 332. In a similar vein, Mrs. Vanasco notes that in the year she initially applied for tenure (1989–90), three individuals under fifty were granted tenure while Mrs. Vanasco and two other individuals over fifty were denied tenure. However, Mrs. Vanasco again fails to supplement this information by engaging in a detailed comparison of her own qualifications (or those of the other older candidates denied tenure) to those of the younger candidates who were granted tenure.[5] Accordingly, a reasonable factfinder could not infer age discrimination from the scant comparative evidence offered by Mrs. Vanasco.

Second, Mrs. Vanasco contends that the University's reason for denying her tenure

ought to be disbelieved because the FAC questioned the fairness of the 1991–92 IPTC membership composition. The FAC based its conclusion on the fact that 4 out of the 7 IPTC members had already discussed Mrs. Vanasco's application for tenure prior to meeting as the IPTC: 1 member was on the 1991–92 CPTC and 3 members were on the 1989–90 IPTC that had considered Mrs. Vanasco's first tenure application.[6] We cannot accept this argument. There is no indication in the record that the University's rejection of the FAC concern was not based on an honestly held belief that the deliberations of the 1991–92 IPTC produced an accurate assessment of Mrs. Vanasco's tenure application despite the members' earlier consideration of the matter. If the University was wrong in its estimation of the committee's ability to reach an accurate appraisal, that error in judgment does not establish that the University was dishonest in asserting its belief that IPTC's determination of Mrs. Vanasco's qualifications was correct. Indeed, this court has repeatedly stressed that employment discrimination laws are not meritselection programs; nor do they mandate that employers follow reasoned and fair decisional processes. *See Kuhn*, 78 F.3d at 332; *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir.1988). Instead, they require only that employers not base their decisions on forbidden reasons such as the employee's race, sex or age. This record will not support the conclusion that whatever procedural irregularities occurred here were meant to mask actual but unarticulated reasons for the tenure denial.

Next, Mrs. Vanasco contends that pretext can be inferred from other procedural irregularities that the FAC found in the University's handling of each of her tenure applica-

---

**5.** Mrs. Vanasco does point to the University's decision to grant tenure to Ana King, an instructor who did not have a degree in her field. This comparison does little to help Mrs. Vanasco for two reasons. First, Mrs. Vanasco provides us with too little information to engage in a meaningful comparison of Ms. King and Mrs. Vanasco. For example, there is no evidence in the record indicating when Ms. King applied for tenure, her field, how long she had been teaching in that field, or how active she had been in departmental and university-wide activities. Second, at least according to this record, the

University's dissatisfaction with Mrs. Vanasco stemmed from concerns wholly unrelated to quality or quantity of the degrees she did or did not possess.

**6.** There is no evidence in the record indicating that the composition of the 1991–92 panel was in violation of a previously announced University policy. We also note that Mrs. Vanasco has presented no evidence tying the alleged bias of the 1991–92 IPTC to her age.

tions. Because the University afforded her a second opportunity to make her case for tenure, we do not believe that the procedural deficiencies of the first tenure review are relevant to the present inquiry. With respect to the second tenure application, Mrs. Vanasco urges that the University did not immediately inform her of the reasons for its decision to deny that application. The University has supplied an explanation by noting that the delay was due to the University's review of its tenure and promotion policies, including whether a privilege existed regarding the deliberations within the promotion and tenure committees. As soon as the University affirmed the policy that an unsuccessful tenure applicant be told of the reasons for the denial, Mrs. Vanasco was informed of the reasons in writing. Mrs. Vanasco has presented no evidence contesting the honesty of this explanation. Without such evidence, there is no genuine issue of triable fact with respect to the University's explanation.

Finally, Mrs. Vanasco attempts to demonstrate that the University's reasons for denying her tenure were pretextual by providing evidence of her accomplishments as a teacher. The University's dissatisfaction with Mrs. Vanasco's performance did not stem, however, from her ability as a classroom teacher. Moreover, it is undisputed that the University grants tenure selectively and requires candidates to demonstrate a high level of achievement in many areas other than classroom teaching ability. Indeed, as we recently recognized, tenure decisions are often based on "the distinction between competent and superior achievement." *Kuhn*, 78 F.3d at 331. Such decisions necessarily rely on subjective judgments about academic potential. Experienced faculty members may well come to different conclusions when confronted with voluminous and nuanced information about a colleague's overall capacity to make a long-term institutional contribution. *See Namenwirth v. Board of Regents of the Univ. of Wis. Sys.*, 769 F.2d 1235, 1243 (7th Cir.1985), *cert. denied*, 474 U.S. 1061, 106 S.Ct. 807, 88 L.Ed.2d 782 (1986). Universities should not be allowed to use the subjective nature of the tenure process to camouflage discrimination. Congress did not intend that institu-

tions of higher learning enjoy immunity from the Nation's antidiscrimination statutes. *See Davis v. Weidner*, 596 F.2d 726, 731 (7th Cir.1979). However, we must not second-guess the expert decisions of faculty committees in the absence of evidence that those decisions mask actual but unarticulated reasons for the University's action.

In this case, the University met its burden of production by coming forward with legitimate nondiscriminatory reasons for its decision to deny Mrs. Vanasco's second application for tenure. Mrs. Vanasco has presented no evidence allowing a reasonable factfinder to conclude that the University's proffered reasons were merely a pretext for age discrimination. Accordingly, the district court correctly entered summary judgment in favor of the University on Mrs. Vanasco's age discrimination claim.

## C.

We turn now to Mrs. Vanasco's claim that the University denied her second tenure application in retaliation for her having filed an age discrimination complaint after her first application was denied. Under the ADEA, it is unlawful for an employer to discharge or otherwise discriminate against an employee because that employee has brought a charge under the ADEA. *See* 29 U.S.C. § 623(d). Retaliation cases, like other disparate treatment employment discrimination cases, are analyzed under the *McDonnell Douglas* framework. *See Alexander v. Gerhardt Enter., Inc.*, 40 F.3d 187, 195 (7th Cir.1994). In order to establish a prima facie case of retaliatory discharge in violation of the ADEA, Mrs. Vanasco must make three showings: (1) she engaged in statutorily protected expression (e.g., the filing of the EEOC charge); (2) she suffered an adverse employment consequence (e.g., the denial of tenure); and (3) there is a causal connection between the protected activity and the adverse action. *See McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997). If Mrs. Vanasco is able to establish a prima facie case of retaliatory discharge, the burden of production shifts to the University to articulate a nondiscriminatory reason for denying Mrs. Vanasco tenure. *See id.* at

797. "Once the employer makes this showing, the burden then shifts back to the employee to show that the employer's proffered reasons are pretextual and that its actual reason was discriminatory or retaliatory." *Id.*

The district court granted summary judgment in favor of the University because Mrs. Vanasco was unable to establish a prima facie case of retaliatory discharge. Specifically, the district court held that Mrs. Vanasco was unable to present evidence sufficient to create a genuine issue of material fact on the issue of whether a causal link existed between her 1990 EEOC charge and the University's decision to deny her second application for tenure. For the reasons set forth below, we agree with the determination of the district court.

In order to demonstrate the "causal link" element of a prima facie case of retaliatory discharge, Mrs. Vanasco must establish that the University's decision to deny her second tenure application and her filing of the 1990 EEOC charge were not wholly unrelated. *See Hunt–Golliday v. Metropolitan Water Reclamation Dist. of Greater Chicago,* 104 F.3d 1004, 1014 (7th Cir.1997). In an effort to make this showing, Mrs. Vanasco relies on much of the same evidence she relied on in her attempt to demonstrate that the University's proffered reasons for its decision to deny her tenure were merely a pretext for age discrimination. In particular, Mrs. Vanasco again focuses on the composition of 1991–92 IPTC and on the University's failure to notify her promptly of the reasons for its decision to deny her second tenure application.

This evidence is not enough to show a relation between the University's decision and Mrs. Vanasco's protected activity. First, the fact that several members of the 1991–92 IPTC had reviewed Mrs. Vanasco's first application for tenure cannot, standing alone, support the conclusion that the University's ultimate decision to deny her tenure was in retaliation for her earlier discrimination claim. Such an inference is too attenuated. Second, as we discussed earlier, the unrebutted evidence in this record is that the University's delay in issuing a statement of reasons to Mrs. Vanasco was due to the fact that the University was in the process of reviewing its tenure and promotion policies, including whether a privilege existed regarding the deliberations within the promotion and tenure committees. Thus, Mrs. Vanasco has presented no evidence indicating a link between the University's decision to deny her tenure and her protected activity. Accordingly, she has failed to establish a prima facie case of retaliatory discharge.[7]

In any event, even if Mrs. Vanasco were able to present evidence sufficient to establish a prima facie case of retaliatory discharge, she has failed to show that the University's proffered reasons for denying her tenure were pretexual. Our earlier discussion of pretext in connection with Mrs. Vanasco's age discrimination claim applies with equal force to her retaliatory discharge claim and we need not repeat it here. *See McClendon,* 108 F.3d at 797; *Hunt–Golliday,* 104 F.3d at 1014; *Smart v. Ball State Univ.,* 89 F.3d 437, 439 (7th Cir.1996). Accordingly, the district court properly entered summary

7. In addition to the arguments discussed above, Mrs. Vanasco also attempted to establish a link between the University's decision and her protected activity by contending that the University's treatment of her changed after she filed her original complaint of age discrimination. In particular, Mrs. Vanasco claims that the University used her repeated absences from committee and department meetings to justify its denial of her second tenure application despite the fact that it was on notice that she would have to miss some of those meetings because they conflicted with courses she was taking in pursuit of additional graduate degrees. Mrs. Vanasco claims that the University was on notice of her inability to attend these meetings because she had applied for an unpaid leave of absence to pursue graduate work in 1986. Mrs. Vanasco's argument is unpersuasive. Her request for leave was turned down by the University in February 1987. At that time, the University specifically informed Mrs. Vanasco that the Language Institute believed it was in the Institute's best interest for Mrs. Vanasco to focus on her teaching, committee work and attendance at College-wide meetings. *See* R.15, Ex. 23. Thus, Mrs. Vanasco was on notice well before her first application for tenure that the University believed her committee work and attendance at College-wide meetings to be more important than her pursuit of additional graduate degrees.

judgment in favor of the University on Mrs. Vanasco's retaliatory discharge claim.

## CONCLUSION

For the reasons set forth in the foregoing opinion, we affirm the judgment of the district court.

AFFIRMED.