## In re CONSOLIDATED INDUSTRIES CORP., Debtor

**Daniel L. Freeland, in his capacity as Trustee of the Chapter 7 Estate of Consolidated Industries Corp., Plaintiff,**

v.

**Enodis Corporation, f/k/a Welbilt Corporation, Welbilt Holding Company, Marion H. Antonini, Daniel Yih, Richard L. Hirsch, David A. Hirsch, Lawrence R. Gross, Defendants.**

No. Civ. 4:01cv0072AS.

United States District Court, N.D. Indiana, Hammond Division at Lafayette.

Dec. 9, 2002.

**356**

Gordon E. Gouveia, Gouveia and Miller, Merrillville, IN, Ronald R. Peterson, Catherine Steege, Jeffrey L. Gansberg, Joel T. Pelz, Jenner and Block, Chicago, IL, for Plaintiff.

Carl A. Greci, Baker & Daniels, South Bend, IN, James J. Ammeen, Jr., Baker & Daniels, Indianapolis, IN, John R. Burns, III, Mark A. Werling, Baker & Daniels, Fort Wayne, IN, J. Joseph Bainton, John G. McCarthy, Bainton McCarthy, LLC, New York City, for Defendants.

Edward R. Cardoza, F. Jonathan Zusy, Sommer & Barnard, PC, Indianapolis, IN, for Debtor.

### MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

This matter is before the Court on Plaintiff's ("Trustee"), motion for summary judgment. Defendants ("Enodis") submitted their own motion for summary judgment. Both parties submitted briefs in opposition to the others' motion for summary judgment. This Court heard oral

argument in this matter in Lafayette, Indiana on October 7, 2002. On or about January 7, 2002, in light of the issues addressed by the Bankruptcy Court in its recommendation of the motion to withdraw the reference entered on or about December 17, 2001, this Court granted the withdraw of the reference as to counts VIII and IX of the Third Amended Complaint and denied all remaining counts of the Third Amended Complaint. Therefore, the only issues, in regards to the motions for summary judgment before this Court, are as to counts VIII and IX.

## I. BACKGROUND

The case before us is not only arduous in regards to the details and facts surrounding it, it is also very voluminous in regards to the various motions, appendixes, declarations, and other documents filed on its behalf. Rather than reiterating the myriad disputed and undisputed facts, this Court deems it a better use of time to address the issues presented to this Court, while focusing on the specific facts pertinent to those particular issues.

## II. DISCUSSION

### A. Standard Of Review

In order to survive a motion for summary judgment, the plaintiffs must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Electric Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The plaintiffs must present "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e) and only if a reasonable jury could render a verdict for them do they defeat summary judgment. *Jordan v. Summers*, 205 F.3d 337, 342 (7th Cir.2000). See also *Vanasco v. National–Louis Univ.*, 137 F.3d 962, 965 (7th Cir. 1998). In determining whether summary judgment is appropriate, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in his favor. *Schneiker v. Fortis Insurance Co.*, 200 F.3d 1055 (7th Cir.2000); *Baron v. City of Highland Park*, 195 F.3d 333, 337–38 (7th Cir.1999). The burden of establishing a lack of any genuine issue of material fact rests on the movants. *Wollin v. Gondert*, 192 F.3d 616, 621–22 (7th Cir. 1999); *Essex v. United Parcel Service, Inc.*, 111 F.3d 1304, 1308 (7th Cir.1997). The nonmovants, however, must make a showing sufficient to establish any essential element for which they will bear the burden of proof at trial. *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 681 (7th Cir. 1999); *Wintz v. Northrop Corp.*, 110 F.3d 508, 512 (7th Cir.1997). Furthermore, any dispute over irrelevant or unnecessary facts will not foreclose the granting of summary judgment. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. A genuine issue as to a *material* fact is required to defeat summary judgment. *Id.* A fact is material only when it might affect the outcome of the case. *Id.* With these principles in mind, the court now turns to the substantive merits of the case.

### B. The Transfer Date

■ The Defendants' first argument is based on a mistaken date in one part of the Trustee's complaint. The Defendants contend that this is justification for dismissing counts VIII and IX in their entire-

ty. In Counts VIII and IX, the Trustee incorrectly states that the $7 million transfer took place in December 1997, rather than the correct date, six days later on January 6, 1998. However, elsewhere in the complaint as well as in supporting documents, the correct date is identified by the Trustee. In deciding whether a complaint fairly notifies a defendant of the matters sought to be litigated, courts often look beyond the pleadings to the pretrial conduct and communications between the parties. *Sundstrand Corp. v. Standard Kollsman Indus., Inc.*, 488 F.2d 807, 811 (7th Cir.1973); *accord Berman v. Midwesco, Inc.*, 1992 WL 59109 (N.D.Ill. March 13, 1992). Throughout this action, there have been numerous depositions, declarations, as well as many other supporting documents filed with this Court. It is hard to believe that the Defendants were confused as to the transfer date of the $7 million to which the Trustee was referring. There is no evidence of any prejudice of the Defendants because of this mistaken date. Therefore, counts VIII and IX will not be dismissed due to a mistaken date in one part of the Trustee's complaint.

## C. Fraudulent Transfer Claims (Count VIII)

The Trustee, in his motion for summary judgment, seeks to avoid two transfers as fraudulent transfers under 11 U.S.C. § 548(a). 11 U.S.C. § 548 states:

(a)(1)The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or

after the date that such transfer was made or such obligation was incurred, indebted; or

(B)(i) received less than reasonably equivalent value in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

The first transfer the Trustee seeks to avoid as a fraudulent transfer is the $7 million that Consolidated directed Finova to wire transfer to Welbilt on January 6, 1998. The second transfer the Trustee seeks to avoid as a fraudulent transfer is the cash, amounting to $369,559.35, that was allegedly kept by Welbilt upon deposits made by Consolidated to Welbilt's bank accounts per their request.

### 1. The $7 Million Transfer

#### a. Property Of The Debtor

▮ The Trustee seeks to avoid the $7 million transfer as fraudulent under 11 U.S.C. § 548. The Trustee argues that when Welbilt sold Mr. Hall all of the outstanding common stock of Consolidated, Consolidated, and not Hall, as the Defendants argue, paid the $7 million purchase price by borrowing the money on a secured basis from Finova Capital Corporation. To prevail on a claim to avoid a transfer as fraudulent, it must first be

established that the challenged transfer was a transfer of the debtor.

■ The Trustee contends that Consolidated, not Hall borrowed $7.5 million from Finova and directed Finova to transfer $7,108,500 of those funds to Welbilt. Consolidated promised to repay Finova and gave it a lien on all of its assets. The Trustee argues that had Consolidated not transferred the proceeds to Welbilt, it could have had the money to use for other purposes, thus establishing it as property of the debtor. While the Code does not specifically define an interest of the debtor in property, the Seventh Circuit has held that "property belongs to the debtor ... if its transfer will deprive the bankruptcy estate of something which could otherwise be used to satisfy the claims of creditors." *In re Merchants Grain, Inc.*, 93 F.3d 1347, 1352 (7th Cir.1996).

The Defendants argue that Hall, not Consolidated paid $7 million via Finova to Enodis in exchange for all of the outstanding stock of Consolidated. However, the fact that Mr. Hall was the person who received a dividend from Consolidated does not demonstrate that the payment was a transfer of property belonging to him. Consolidated borrowed the money from Finova which was then transferred to Welbilt per Consolidated's instructions.

The Loan and Security Agreement, the Secured Revolving Note, and the Secured Term Note are all between Finova as the lender and Consolidated as the borrower. Furthermore, not only could Consolidated have used the borrowed money for other purposes had it chosen to do so, Consolidated had complete control over the use of the $7 million. Using that control, Consolidated directed Finova to transfer the designated money to Welbilt's account. The Trustee has established this element of his claim.

**b. Within One Year**

It is undisputed that the $7 million transfer occurred on January 6, 1998, and was therefore within one year, as required under 11 U.S.C. § 548, of the filing of the petition which occurred on May 28, 1998. Therefore, this element of the Trustee's fraudulent transfer claim has been met.

**c. Reasonably Equivalent Value**

■ Whether a debtor has received reasonably equivalent value for a transfer turns on the question of what the debtor received for the transfers it made. *See, In re Vitreous Steel Products Co.*, 911 F.2d 1223, 1234–35 (7th Cir.1990). Also, courts have consistently held that when a debtor's assets are used to finance a leveraged buyout of the debtor's stock that the debtor typically receives nothing of value. *See Buncher Co. v. Official Comm. of Unsecured Creditors of GenFarm Ltd. Partnership IV*, 229 F.3d 245 (3rd Cir.2000); *Leonard v. Norman Vinitsky Residuary Trust (In re Jolly's Inc.)*, 188 B.R. 832, 842–46 (Bankr.D.Minn.1995).

In this case, Consolidated borrowed $7 million from Finova on a secured basis and transferred the money to Welbilt. After the transfer, all of Consolidated's assets were subject to Finova's liens. Consolidated received absolutely nothing as a result of the transfer. Therefore, Consolidated received no value as a result of paying Welbilt $7 million.

**d. Insolvency**

■ The issue of insolvency is really the crux of this action. Proof of insolvency is a prima facie element of counts VIII and IX of the Trustee's complaint. The Bankruptcy Court, on or about February 27, 2002 denied Defendants' motion for partial summary judgment on the issue of solvency. The Bankruptcy Court held that there

were genuine issues of material facts as to solvency and that the Defendants had not proven Consolidated to be solvent. The Bankruptcy Court stated that although a business sold for a positive price may be evidence of solvency, it is not—in the face of evidence to the contrary—irrefutable proof. A debtor is insolvent if the fair value of its assets is less than the fair value of the debtor's liabilities. 11 U.S.C. § 101(32).

The Trustee argues that Consolidated's financial statements showed it to be insolvent at all times during the year before the filing of its bankruptcy petition. Further, the Trustee argues that the experts for the Trustee have both opined that Consolidated was insolvent at all times during the year before its bankruptcy filing. The Defendants contend that the Trustee submitted no evidence regarding the solvency issue.

The Defendants argue that the only "evidence" relied upon by the Trustee are copies of unsworn reports provided by his solvency experts. The Defendants contend these reports are hearsay and thus do not meet the evidentiary standards of Rule 56. The Defendants rely on the premise that the only evidence offered by the Trustee in support of Consolidated's insolvency is the unsworn expert reports. The Defendants contend that because the unsworn expert reports do not meet the requirement of FRCP 56(e), they should not be considered in the issue of solvency. *See Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir.1997). They further argue that without these expert reports there is no evidence to support Consolidated's insolvency.

However, the Trustee argues that Consolidated's own financial statements showed it to be insolvent during the year before its bankruptcy filing and that the Defendant's expert confirms this argument. The Trustee refers to the financial statements to which Kandy Moyer, the highest manager in accounting at Consolidated, in her affidavit, stated were prepared in the course of regular business, under her direction. According to those statements, from October of 1996 until December of 1997, the total liabilities were greater than the total assets, showing Consolidated to be insolvent. Defendants' expert, Mr. Gardner, disputes the results of the financial statement. However, Mr. Gardner's report incorrectly assumes that Mr. Hall had agreed to pay $7 million to Consolidated, and therefore, Mr. Gardner adds $7 million to Consolidated's assets. Also, Mr. Gardner's report and testimony at his deposition differ as to the amount of Consolidated's contingent liability for tort claims as of January 5, 1998, and therefore inconsistency exists between his previous testimony and his disagreement with the financial statement.

The Trustee argues that even if the Court were to find one or both of the Trustee's experts' reports inadmissible or either or both unable to testify, per the separately filed motion in limine to preclude the testimony of the Trustee's two expert witnesses filed by Defendants, that expert testimony is not required to prove insolvency. *See In re Buffalo Auto Glass*, 187 B.R. 451, 453 (Bankr.W.D.N.Y.1995). The Trustee can use appropriate means to prove insolvency, including balance sheets, financial statements, appraisals, expert reports, and other affirmative evidence. *In re Thomas Farm Systems, Inc.*, 18 B.R. 541, 543 (Bankr.E.D.Pa.1982). The Trustee asserts that the financial statement attested to by Kandy Moyer proves Consolidated's insolvency one year prior to filing.

The Defendants next argue that the best evidence of the fair value is not these statements but rather a draft of an audit. However, this was just that, a draft, which

was never completed. An uncompleted draft is not better evidence of the fair value than the statements prepared by Consolidated and sworn to by the highest manager in accounting of Consolidated.

The Trustee also asserts that a fundamental problem exists with the Defendants' argument in that Welbilt gave Consolidated away for nothing. Welbilt had previously guaranteed the $7 million that Consolidated owed to Tippecanoe County with a letter of credit. The purchase price for Consolidated's stock, the Trustee argues not coincidentally, was $7 million. Also in the Stock Purchase Agreement Welbilt assumed primary responsibility for this $7 million debt. The Trustee contends, considering the events that took place alone, prove that Consolidated was insolvent: Mr. Hall pays nothing for Consolidated; Welbilt receives $7 million which it uses to extinguish the Tippecanoe County debt; and Consolidated's creditors suffer.

It is not necessary for this Court to consider whether the expert reports should be consider or whether their testimony would be admissible. Based upon the financial statement as well as the surrounding facts, Consolidated has met the burden of proving insolvency during the requisite one year before filing.

### 2. The $369,559.35 Transfer

#### a. Property Of The Debtor

■ Between May 28, 1997 and December 30, 1997, Consolidated transferred $15,815,582.36 into bank accounts controlled by Welbilt, according to the Trustee. The Trustee contends that Welbilt made certain transfers from its accounts on behalf of Consolidated and retained $369,559.35 of Consolidated's cash. The Defendants do not dispute that they had Consolidated deposit its money into their accounts, the only discrepancy is that De-

fendants contend they gave it back. Regardless, it has been established that the $369,559.35 was the property of the debtor, because it was money collected from its customers in the operation of its business that could have been used for other purposes had it not been transferred into Welbilt's account. *See Merchants Grain Inc.*, 93 F.3d 1347 at 1352.

#### b. Within One Year

Similar to the $7 million transfer, the Defendants do not dispute that Consolidated's deposits of cash in the amount of $369,559.35, all occurred between June 3, 1997 and December 31, 1997, and therefore within one year of Consolidated's filing on March 28, 1997. Therefore, this element of the Trustee's fraudulent transfer claim has been met.

#### c. Reasonably Equivalent Value

■ The Trustee argues that although Welbilt paid certain bills of Consolidated with the deposited money, it simply kept $369,559.35 of Consolidated's cash. The Defendants do not address this specifically, but just make a blanket statement that the deposited money was used to pay off debts and bills owed by Consolidated. The Defendants argue that they were obligated to fund some $1 million of checks written by Consolidated that had not yet been presented for payment. However, there is no proof that Consolidated received value for the amount kept as cash by Welbilt and the Defendants do nothing to prove such. Transfers made for no consideration at all do not provide reasonably equivalent value to the debtor. *Nordberg v. Grupo de Inversiones del Caribe, S.A. (In re Chase & Sanborn Corp.)*, 59 B.R. 7, 8 (Bankr.S.D.Fla.1986). The Defendants have not presented any confirmation as to what was done or who was paid with the $369,559.35. The facts show it as

simply cash that was kept by Welbilt. Therefore, this element of Trustee's fraudulent transfer argument has been met.

### d. Insolvency

This issue has already been addressed and complied with by the Trustee. The Trustee has proven the insolvency of Consolidated.

### 3. Actual Intent

The Trustee has moved for summary judgment on the "constructive fraud" aspects of this claim under 11 U.S.C. § 548(a)(1)(B). Due to the fact that the Trustee has successfully proven all of the requisite elements under 11 U.S.C. § 548(a)(1)(B), it is not necessary for this Court to consider the arguments made regarding the alternative way to prevail on a fraudulent transfer claim under 11 U.S.C. § 548(a)(1)(A).

### D. Preference Claims (Count IX)

A trustee may avoid any transfer of an interest of a debtor by means of a preferential transfer under 11 U.S.C. § 547(b) that was:

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The Trustee seeks to avoid the $108,500 Consolidated transferred to Welbilt to repay it for certain insurance expenses. Alternatively, the Trustee argues, to the extent that Welbilt contends that the $7 million it received was actually in payment of the Tippecanoe IRB debt, that the $7 million payment to Welbilt was preferential.

### 1. The $108,500 Transfer

#### a. To Or For The Benefit Of A Creditor

■ Welbilt advanced $108,500 on behalf of Consolidated to enable Consolidated to purchase insurance. Welbilt required Consolidated to repay it at the time of the closing of the Stock Purchase Agreement with Mr. Hall. Therefore, the Trustee argues that Welbilt's loan to Consolidated of $108,500 created a claim and made Welbilt a creditor of Consolidated. Defendants do not dispute most of the elements of the Trustee's preference claims, however, they argue that the transfers were not interests of the debtor and that Consolidated was not insolvent. These are the identical arguments the Defendants make in response to the Trustee's fraudulent transfer claims regarding the $7 million and the $369,559.35. Consolidated instructed Finova to wire Welbilt the $108,500 in order to repay Welbilt for the insurance previously purchased by Welbilt on behalf of Consolidated. The $108,500 is part of the total money which Consolidated borrowed from Finova on a secured basis under the agreement reached. Therefore, the transfer was an interest of Consolidated.

Furthermore, because Welbilt advanced the $108,500 on Consolidated's behalf with the requirement of repayment, this created a claim which in turn made Welbilt a creditor of Consolidated. The term claim is broadly defined to include any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5); *Fogel v. Zell,* 221 F.3d 955, 960 (7th Cir.2000).

### b. For Or On Account Of An Antecedent Debt

 An antecedent debt exists whenever the creditor has a claim against the debtor, even if the claim is contingent, unliquidated, or unfixed. *Warsco v. Preferred Technical Group,* 258 F.3d 557, 569 (7th Cir.2001). In this case, as stated, Welbilt advanced Consolidated $108,500, with the requirement that Consolidated repay Welbilt, thus this created an antecedent debt. When Consolidated directed Finova to transfer $108,500 to Welbilt, such transfer was on account of this antecedent debt owed to Welbilt by Consolidated.

### c. Made When The Debtor Was Insolvent

As stated, the insolvency of Consolidated has been proven as to the transfers, including the $108,500 portion of the transfer.

### d. Between Ninety Days And One Year

 Consolidated repaid Welbilt the $108,500 on or about January 6, 1998, which was within one year of May 28, 1998, the date which Consolidated filed its chapter 11 petition. The Trustee argues that the second prong to this is also satisfied in that Welbilt was an insider of Consolidated on that date because on January 6, 1998,

Welbilt was the ultimate parent corporation of Consolidated. The Defendants argue that Welbilt was not an insider when the transfer occurred. However, it does not seem logical that one could cease to be an insider before the transfer occurred which allowed Mr. Hall to purchase Consolidated. The transfer of ownership of Consolidated to Mr. Hall could not and did not occur until after Defendants received the wire transfer from Finova per instructions from Consolidated. The law is well established in that where a transfer is part of a larger single transaction, the transferee is an insider—and subject to the one year period—for the entire time it takes to consummate the deal. *See In re EECO Inc.,* 138 B.R. 260, 264 (Bankr.C.D.Cal. 1992); *In re Trans Air Inc.,* 79 B.R. 947 (Bankr.S.D.Fla.1987); *In re F & S Central Mfg. Corp.,* 53 B.R., 842, 849 (Bankr. E.D.N.Y.1985). The deal was not consummated until the Defendants received the wire transfer from Finova per Consolidated's instructions allowing Mr. Hall to purchase Consolidated.

### e. Enables Creditor To Receive More Than Chapter 7 Case

 The final element necessary in order to establish the existence of a preference claim is whether the transfer enabled the creditor to receive more than the creditor would have received if the transfer had not been made and the creditor received payment as if the case were a case under chapter 7 of this title and the creditor received payment of such debt to the extent provided by the Bankruptcy Code. 11 U.S.C. § 547(b)(5). Welbilt received the full $108,500. The Trustee has testified that he will not be able to pay unsecured claims in full in this case. What the creditor would have received in a hypothetical chapter 7 case is measured as of the petition date. *In re Richards,* 92 B.R.

369, 371 (Bankr.N.D.Ind.1988). Welbilt received the entire amount it was owed, $108,500, which is the most it could have received and more than it would have received under a chapter 7 situation, which would have been nothing, as testified to by the Trustee.

### 2. The $7 Million Transfer

Because the $7 million transfer was successfully avoided as a fraudulent transfer under 11 U.S.C. § 548, it does not need to be determined whether or to what extent Welbilt claimed that the $7 million it received was actually in payment of the Tippecanoe IRB debt, and possibly avoidable as a preference under 11 U.S.C. § 547.

### E. Welbilt's Affirmative Defenses

The next issue that must be addressed in the Trustee's motion for summary judgment is Welbilt's affirmative defenses. The Defendant's have amended their affirmative defenses to only three. The contested defenses are 1) statute of limitations only as to the $369,559.35; 2) failure to join an indispensable party; and 3) payment. The Trustee argues that each of these is invalid and unavailable.

### 1. Statute Of Limitations

The Defendants argue that the claims asserted in counts VIII an IX are time-barred. They contend that every penny of every transfer made between May 28, 1997 and December 1997 represents the payment of interest accrued, but unpaid, on the 1988/1999 Dividend Notes. The Defendants allege that the $369,559.35 sought by the Trustee represents payment of accrued interest on the Notes and that the time to challenge the Notes expired well before the Trustee was appointed. However, the Defendants do not offer any support that the $369,559.35 represents payment of accrued interest on the Notes.

Furthermore, according to the deposition of Marion Antonini, the Notes were converted to paid in capital, and therefore the $369,559.35 could not have been interest on the Notes because the Notes were no longer in existence in 1997. This complaint was filed within one year of the Trustee's appointment and is not time-barred. 11 U.S.C. § 546(a).

### 2. Indispensable Party

The Defendants contend that Mr. Hall is an indispensable party to this action. The Defendants argue that the Trustee's action arises from a proof of claim that Enodis filed against Consolidated in the underlying bankruptcy. They further argue that because this same claim was filed by them against Mr. Hall that he must be joined in this action to avoid conflicting judgments. However, the Trustee contends that the only portion of this action relating to insurance is the preference claim which seeks to return the $108,500 paid by Consolidated to Welbilt. They argue that the issue does not concern who had responsibility for the insurance payment, but whether Welbilt improperly paid itself ahead of other creditors when it took the $108,500 payment. Mr. Hall, nor anyone else can sue the Defendants on Trustee's Section 548 and 547 claims because these belong exclusively to the bankruptcy estate and only the Trustee has standing to pursue them. *See Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 304 F.3d 316, 333 (3d Cir.2002). There are two separate actions with two separate questions regarding the insurance. Therefore, the decision rendered by this Court in this action has no bearing on Mr. Hall's possible responsibility concerning the insurance payment. There is no evident risk of inconsistent judgments with respect to liability for the insurance pay-

ments since that is not the issue before this Court in this action.

### 3. "New Value"

 The Defendants' final argument in opposition to the Trustee's motion for summary judgment is based on the theory that they cannot collect twice. The Defendants argue that whether the money spent for the benefit of Consolidated after the sale to Mr. Hall represented either the remedying of alleged voidable transfers, or the provision of new value under Section 547 of the Bankruptcy Code, that the Trustee cannot collect twice. They claim that the payment of $7,018,000 to Tippecanoe County to satisfy Consolidated's indebtedness as well as checks issued by Enodis on Consolidated's behalf constitutes new value. The Trustee argues that Welbilt's payment of debts for which it was already obligated does not qualify as new value under the Code. 11 U.S.C. § 547(a)(2). The very case that the Defendants cite in their opposition brief, *Hassen v. Jonas*, 373 F.2d 880, 881–82 (9th Cir.1967), clearly holds that payments to a debtor's creditors does not constitute a payment to the debtor and is no defense to a fraudulent transfer action. The Defendants' argument is based on the premise that the payments to creditors of Consolidated either constitute new value or act as a defense to the alleged voidable transfers. However, the payment to creditors does not fit within the definition of new value under 11 U.S.C. § 547(a)(2), nor is it deemed to suffice as a defense to a voidable transfer action under *Hassen v. Jonas*.

### III. CONCLUSION

It has been necessary for this Court to engage in the very time consuming process of wading through the decision of the Bankruptcy Court and the record upon which it was based. It is very important to focus on that record and decision; the detail evident in this Court's legal conclusions has resulted. Counsel here has left no stone unturned, including many irrelevant pebbles. Therefore, the Trustee's motion for summary judgment is **GRANTED**. The Defendants' motion for summary judgment is accordingly **DENIED**. All other pending motions are now rendered moot by this judgment. The trial set for this case on January 6, 2003, is now **CANCELED**.

**IT IS SO ORDERED.**