In the Matter of Peter P. CESARI, Bankrupt.

STANDARD OIL COMPANY OF INDIANA, Appellant,

v.

Thomas V. GOREY, Trustee, etc., Appellee.

No. 11224.

United States Court of Appeals, Seventh Circuit.

Dec. 2, 1954.

Melville A. Gray, Gray, Thomas & Wallace, Joliet, Ill., for appellant.

Joseph Kamfner, Bernard Yedor, Chicago, Ill., for appellee.

Before MAJOR, SWAIM and SCHNACKENBERG, Circuit Judges.

SWAIM, Circuit Judge.

This appeal is from a judgment of the United States District Court for the Northern District of Illinois, Eastern Division, approving and confirming an order of John P. Haley, Referee in Bankruptcy, which required the Standard Oil Company of Indiana, sometimes hereinafter referred to as "Standard," to forthwith turn over to Thomas V. Gorey, Trustee for the Bankrupt Estate of Peter P. Cesari, "all motor oils, grease, tires and other automotive supplies," of the value of $2,359.79, which had belonged to the Bankrupt and which had theretofore been transferred to Standard by the

Bankrupt, "or in lieu thereof to pay" said Trustee the sum of $2,359.79.

Cesari, on December 1, 1951, had purchased the above described personal property from one Stubinger, the then owner who was operating the filling station where this personal property was located. The real estate there belonged to Standard and was leased by it to the operator of the station. A Mr. Ganzer, who was a sales representative of Standard, had been instrumental in selling this personal property to Cesari, and Ganzer also found the buyer, Winton, to whom Cesari, on December 1, 1952, sold the personal property at its inventoried value of $2,359.79. The inventory of the property was made by Ganzer, Cesari and Winton. When the inventory was completed Winton, the purchaser, gave Cesari a check for $2,359.79, the purchase price as determined by the inventory. Cesari thereupon endorsed and delivered the check to Standard.

From the proceeds of this check Standard paid itself $2,111.62, the amount of a debt due to it by the Bankrupt, Cesari, and then made its check to Cesari for $248.17, the balance. This latter check Standard then sent to its agent Ganzer. Winton, the purchaser, Ganzer, representing Standard, and Cesari, the Bankrupt, then went to the office of a Mr. Donat, the lawyer representing Stubinger to whom the Bankrupt still owed a balance of $242.17 on his purchase price of the property. Cesari endorsed the check from Standard to Stubinger, delivered it to Stubinger's lawyer and received back from the lawyer $6.00, representing the balance of the proceeds of the check after payment of the balance of the debt to Stubinger. All of this occurred within two months before Cesari filed his petition in bankruptcy.

The Trustee of the Bankrupt Estate filed a petition with the Referee in Bankruptcy alleging that on December 1, 1952, the Bankrupt had been the owner and possessor of the personal property in question; that on that date, about two months preceding the filing of his petition in bankruptcy, the Bankrupt transfered, delivered and turned over to the Standard Oil Company of Indiana the personal property involved herein; that said company received said property while knowing that Cesari was insolvent or while having reason to believe that he was insolvent; that during the period after said petition in bankruptcy was filed Standard had concealed the property; and that at the time of the filing of the petition Standard had this property in its possession, the title to which property was in said Trustee. The Trustee's petition prayed for an order requiring the Standard Oil Company of Indiana to turn over the property or the value thereof, to said Trustee.

To this petition the Standard Oil Company filed an answer denying that the Bankrupt on December 1, 1952, or at any other time, either transferred, delivered or turned over to Standard the personal property in question, and further denied that it (Standard) had the property in its possession or at its disposal. This answer also denied that Standard received the property described or any other property or thing of value from the Bankrupt while knowing that Cesari was insolvent or while having reason to believe that he was insolvent. The answer finally denied that Standard had concealed said property or then had in its possession any property which legally belonged to the Trustee in Bankruptcy.

On the issues made by these pleadings a hearing was held before the Referee in Bankruptcy, evidence was heard and the Referee found: (1) that on or about December 1, 1952, the Bankrupt was the owner of the above described personal property of the value of $2,359.79; (2) that on that date the Bankrupt transfered and delivered to Standard said personal property which was sold for $2,359.79, which amount was all retained by Standard except the sum of $6.00; (3) that at the time of said transfer Standard knew, or had reason to believe, that the Bankrupt was insolvent; and (4) that this transfer was made to Standard for the purpose of defrauding the creditors of the Bankrupt and was, therefore,

voidable under Section 67–3 and was void under Section 70 of the Bankruptcy Act. The Referee therefore issued an order requiring Standard to forthwith turn over to the Trustee in Bankruptcy the said personal property or in lieu thereof to pay the Trustee the sum of $2,359.79.

Standard petitioned the District Court for a review of the findings and order of the Referee but the District Court approved and confirmed the Referee's order.

Standard agrees that the Referee's findings of fact should not be disturbed on appeal unless such findings are plainly erroneous, but insists that "as a matter of law, the uncontroverted facts contained in the record, when taken in a light most favorable to the Trustee sustain neither the findings of fact nor the conclusions of law reached by the Referee." We are constrained to agree in part with Standard's contention.

In the first place, the evidence does clearly show that the transfer here under attack, instead of being made to Standard as found by the Referee, was made to Winton who purchased the property from the Bankrupt and who was still operating the station on November 18, 1953, the date the hearing before the Referee was held. This fact was not questioned by anyone who testified at the hearing. Winton in this entire transaction may actually have been acting for and on behalf of Standard, as the Trustee now intimates, but there was no such finding by the Referee and the record does not contain sufficient evidence to support such a finding. The Referee said the transfer of the personal property from the Bankrupt was void under Section 67–3 and Section 70 of the Bankruptcy Act, but the parties agree that the sections of the Bankruptcy Act to which the Referee was so referring were Section 67, sub. d(3), 11 U.S.C.A. § 107 sub. d (3), and Section 70, sub. e(1), 11 U.S. C.A. § 110, sub. e(1).

Section 67, sub. d(3) of the Act provides that every transfer made within four months prior to the filing of a bankruptcy petition by a debtor who is insolvent is fraudulent as to the then existent and future creditors if (1) made in contemplation of filing the bankruptcy petition, (2) made in contemplation of liquidation of all or the greater portion of the debtor's property, (3) made with intent to use the consideration obtained in such transfer to enable a creditor of such debtor to obtain a greater percentage of his debt than some other debtor of the same class, and (4) if the transferee of such transfer at the time of the transfer knew or believed that the debtor intended to make such use of the consideration.

■ As we pointed out in In re Rockford Baseball Club, Inc., 7 Cir., 201 F.2d 685, 686: "Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S. C.A., which prescribes the duty of the trial court to 'find the facts specially', is made applicable to bankruptcy cases by General Order in Bankruptcy No. 37. General Order No. 47 further provides that 'the report of a referee * * * shall set forth his findings of fact and conclusions of law * * *'" and that a fair compliance with Rule 52 is mandatory. In that case we said further that: "While findings in elaborate detail are neither required nor desirable, 'they should be so explicit as to give the reviewing court a clear understanding of the basis of the trial court's decision * * * and to enable it to determine the ground upon which the trial court reached its conclusion.'" In that case we held that an ultimate finding that a mortgage had been "properly executed and recorded" was not sufficient without subsidiary findings showing specific facts as to the execution and recording which would show that the execution and recording was pursuant to law.

■ To sustain the ultimate finding of the Referee that this transfer was voidable under Section 67, sub. d(3), it was therefore necessary that the Referee make subsidiary findings showing that the transfer fell within all of the conditions set out in Section 67, sub. d(3). This the Referee failed to do. There was no finding that the transfer was made in contemplation of filing the bank-

ruptcy petition, no finding that it was made by the debtor with intent to use the consideration obtained to enable a creditor to secure a preference, and no finding that the transferee knew or believed that the debtor intended to make such use of the consideration received by the debtor for the transfer. Apparently on the theory that Standard was the transferee, the Referee did find that Standard "knew or had reason to believe" that the debtor was insolvent. But there was no finding that at the time of the transfer Winton, the transferee, knew or believed that the debtor intended that the proceeds of the transfer were to be used to grant a preference to one of the debtor's creditors. Here, as in Maher v. Hendrickson, 7 Cir., 188 F.2d 700, 702, "we are far asea as to the exact factual basis upon which the judgment was founded."

[4] The findings of the Referee were equally defective as to showing the transfer void under Section 70, sub. e(1) of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. e(1). That section provides:

"A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this title which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this title, shall be null and void as against the trustee of such debtor."

The Trustee claims that since the Referee found that the Illinois Bulk Sales Act, § 78, Ch. 121½, Ill.Rev.Stats., had not been complied with, Section 70, sub. e(1) of the Bankruptcy Act entitles him to recovery from Standard. This section enables the trustee to recover property or its value from the transferee, but it has been held that it does not entitle the trustee to recover from a person who was paid money out of the proceeds of such a sale. Charlesworth v. Hipsh, Inc., 8 Cir., 84 F.2d 834, 836. Because, as we pointed out above, Standard was not the transferee, the Illinois Bulk Sales Act does not give the Trustee any remedy against it.

A careful examination of the entire record in this case fails to reveal the basis of the ultimate finding of the Referee that the transfer was either voidable or void because it was for the purpose of granting a preference to Standard and thereby defrauding the other creditors. Much of the evidence was contradictory and it therefore could have supported either a negative or an affirmative finding on many of the subsidiary questions involved. This court on appeal cannot weigh that evidence, much of which was oral, and make the initial findings that are necessary to support the decision.

The judgment of the District Court is therefore reversed, and the cause is remanded with directions that the District Court remand the matter to the Referee for further proceedings in conformity with the views expressed in this opinion.